Kevin M. Zietz, Esq. (SBN 186244)
E-mail: kevin@zietzlaw.com
LAW OFFICES OF KEVIN M. ZIETZ, PC
16055 Ventura Boulevard, Suite 650
Encino, California 91436
Tel: (818) 981-9200
Fax: (818) 981-9201

Attorneys for Plaintiff,
GREGORY JOHNSON

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GREGORY JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY; SHORT TERM DISABILTY PLAN FOR EMPLOYEES OF DONALDSON COMPANY, INC., and DOES 1 to 10, Inclusive,<br><br>Defendants. | Case No. :<br><br>**COMPLAINT FOR BREACH OF PLAN AND RECOVERY OF PLAN BENEFITS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT**<br><br>**[29 U.S.C. §1132(a)(1)]** |

Plaintiff, GREGORY JOHNSON (hereinafter referred to as "Plaintiff"), complains of Defendants HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY (hereinafter referred to as "Hartford") and SHORT-TERM DISABILITY PLAN FOR EMPLOYEES OF DONALDSON COMPANY, INC. (hereinafter referred to as "the Disability Plan") as follows:

## I. INTRODUCTION

1. This is a civil action brought pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1132(a)(1)(B), to recover short-term disability benefits wrongfully denied to Plaintiff under an employee welfare

benefit plan governed by ERISA.

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

3. Venue is proper in the Central District of California under 29 U.S.C. §1132(e)(2) because (a) the breaches alleged occurred within this District, (b) at least one defendant resides or may be found in this District, and/or (c) the plan is administered in this District. Plaintiff resides in Valencia, California, which is within this District. Hartford, acting as the Plan's claim administrator, handled and processed Plaintiff's claim within this District.

4. All conditions precedent to Plaintiff being able to bring this action have been satisfied, including exhaustion of administrative remedies. Plaintiff's claim for benefits was initially denied on November 26, 2024, and his administrative appeal was exhausted, and his administrative appeal was exhausted on November 5, 2025.

## III. PARTIES

5. Plaintiff is an individual who, during relevant times, was a resident of Valencia, California, located in Los Angeles County, within the Central District of California. Plaintiff was a participant in the Plan as defined herein.

6. Defendant Hartford Life and Accident Insurance Company was at all relevant times a Connecticut corporation with its principal place of business in Hartford, Connecticut. Hartford acted as the claim administrator for the Plan.

7. Defendant the Disability Plan, which is an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1002(1), is a self-insured short-term disability plan sponsored and funded by Donaldson Company, Inc.

8. At all times relevant to this action, Hartford acted as a fiduciary of the Disability Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), by exercising discretionary authority and control over the management and administration of the Disability Plan. Hartford's fiduciary responsibilities included determining eligibility for benefits and making benefit

determinations.

9. At all relevant times, Plaintiff was employed by Donaldson Company, Inc. Plaintiff was a "participant" in and "beneficiary" of the Plan within the meaning of ERISA, 29 U.S.C. §1002(7) and 29 U.S.C. §1002(8).

## IV. FACTUAL BACKGROUND

### A. The Plan and Policy

9. Plaintiff's employer, Donaldson Company, Inc., sponsored a self-insured Short-Term Disability Plan to provide short-term disability income benefits to eligible employees.

10. The Plan is governed by ERISA and is self-funded by Donaldson Company, Inc. under an Administrative Services Only (ASO) arrangement with Hartford acting as third-party claim administrator, Policy Number 697757.

11. Under the Disability Plan, "Total Disability" is defined as being prevented by injury, sickness, mental illness, substance abuse, or pregnancy from performing essential duties of one's occupation, resulting in earnings less than 20% of predisability earnings.

12. Plaintiff was a participant in and covered by the Disability Plan during his employment with Donaldson Company, Inc.

### B. Plaintiff's Employment and Medical Background

13. Plaintiff was employed by Donaldson Company, Inc. as a Designer CAD II, a sedentary position, from October 16, 2008, through June 28, 2024.

14. Despite childhood rhabdomyosarcoma treated with surgery, radiation, and chemotherapy resulting in a prosthetic eye and dental damage, Plaintiff successfully worked for over fifteen years.

15. Plaintiff suffered strokes in 2014 and 2018, causing left-sided weakness and speech impairment.

16. In March 2024, Plaintiff developed new disabling conditions.

### C. Plaintiff's Current Disability and Medical Conditions

17. Beginning in March 2024, Plaintiff developed severe hypomagnesemia (abnormally low magnesium) and hypercalcemia (elevated calcium levels), attributed to renal wasting possibly

resulting from his prior cisplatin chemotherapy or a calcium-sensing receptor disorder. These electrolyte abnormalities persisted and remained debilitating despite ongoing supplementation. Plaintiff came under the care of nephrologist Dr. Ramya Malchira at UCLA and continued treatment with his primary care physician, Dr. Devesh Upadhya.

18. In addition to his physical conditions, Plaintiff suffered from associated mental health conditions, including depression, anxiety, mild neurocognitive disorder, and depressive disorder due to another medical condition. Plaintiff began treatment with psychiatrist Dr. Ananya Sreepathi in July 2024 and therapist Kristina de Bree, LMFT, for ongoing mental health support.

19. Plaintiff experienced severe symptoms, including profound fatigue, difficulty concentrating at work, persistent electrolyte imbalances despite multiple magnesium supplements, diarrhea and other gastrointestinal side effects from the supplements, and poor appetite. These symptoms rendered Plaintiff unable to perform the essential duties of his CAD II Designer position. From September 12-16, 2024, Plaintiff was hospitalized at Henry Mayo Newhall Hospital for recurrent hypomagnesemia and hypercalcemia requiring IV fluids and IV magnesium replacement. During this admission, Plaintiff received treatment including Prolia administration and was started on amiloride for persistent electrolyte abnormalities.

20. Laboratory values demonstrated the severity of Plaintiff's condition, with magnesium levels as low as 0.8 on July 29, 2024, and 1.2 on September 12, 2024, and calcium levels ranging from 10.6 to 11.0. Despite ongoing treatment with multiple magnesium formulations and amiloride, Plaintiff required continuous monitoring and intervention by his nephrologist, Dr. Malchira, and primary care physician, Dr. Upadhya.

**D. Plaintiff’s Claim and Hartford’s Handling**

21. Plaintiff's last actual day of work was June 28, 2024, and his first day of disability was July 1, 2024. Hartford received Plaintiff's leave request on June 25, 2024, with a requested start date of June 30, 2024. Plaintiff electronically signed authorization forms on June 25, 2024. Beginning July 2, 2024, and continuing through November 5, 2024, Hartford sent repeated requests for medical records to Plaintiff's treating physicians, including Dr. Upadhya and Dr. Raghu Konanur Venkataram. Hartford imposed specific and urgent deadlines for responses,

including July 8, July 9, July 11, July 24, August 12, September 6, September 10, October 4, and November 8, 2024.

22. Hartford's record requests were plagued by significant transmission failures and communication issues. Multiple faxes from UCLA Health and other providers failed with "Error Code 700" on July 17, 2024, August 15, 2024, and other dates. UCLA Health Information Management refused to release records on July 11, 2024, citing an invalid authorization because the electronic signature was not executed via DocuSign or Adobe PDF, the authorization failed to specify the requested UCLA location or service dates, and provider offices reported not receiving Hartford's initial faxes.

23. Despite these barriers, Hartford did receive some medical documentation, including completed Attending Physician's Statements on July 17 and August 15, 2024, and an out-of-work recommendation note on July 24, 2024.

24. Despite these barriers, Hartford did receive some medical documentation, including completed Attending Physician's Statements on July 17 and August 15, 2024, and an out-of-work recommendation note on July 24, 2024.

25. Notwithstanding receipt of this medical documentation, Hartford's Behavioral Health Unit conducted clinical reviews on July 25, August 4, November 7, and November 20, 2024, each time concluding it was "unable to recommend clinical support." Hartford's behavioral health reviewers stated there was "insufficient evidence to preclude work from a psychiatric perspective" and cited a "lack of clinical exam findings to substantiate severe psychiatric impairment."

**E. Hartford's Denial Of Benefits**

26. On August 21, 2024, Hartford issued a closure letter to Plaintiff denying his claim retroactively as of July 1, 2024, the first day of disability. Hartford stated the reason for denial was "No Proof of Loss" and indicated that Plaintiff's request for Short-Term Disability benefits was "now closed due to missing information."

27. Hartford authorized a total of zero days of disability benefits, despite having received multiple pieces of medical documentation, including Attending Physician's Statements dated July 17, 2024, and August 15, 2024, and an out-of-work recommendation note dated July 24, 2024.

The denial letter itself acknowledged receipt of these medical records, stating they were "currently insufficient to medically support your request for disability benefits."

28. Hartford's denial thus presented a fundamental contradiction: the claim administrator simultaneously asserted that it had not received all necessary information to make a decision while also making substantive medical determinations that the evidence it had received was medically insufficient to support disability. This dual-track denial—both procedural ("No Proof of Loss") and substantive (medical reviews by Hartford's Behavioral Health Unit finding "insufficient evidence to preclude work from a psychiatric perspective")—revealed that Hartford had, in fact, reviewed medical evidence and made merit-based determinations, contradicting its stated basis for closure.

**F. Plaintiff's Administrative Appeal**

29. Plaintiff retained legal counsel, who submitted formal appeal letters on his behalf dated May 19, 2025, May 27, 2025, July 31, 2025, September 12, 2025, and October 3, 2025. In his initial appeal letter dated May 19, 2025, Plaintiff requested a 90-day extension to complete neuropsychological testing recommended by Dr. Upadhya and enclosed 877 pages of medical records from Henry Mayo Newhall Hospital on CD.

30. Plaintiff's appeal submissions included additional medical evidence from treating physicians, including records from therapist Kristina de Bree, LMFT, psychiatrist Dr. Ananya Sreepathi, and Dr. Upadhya's November 26, 2024 correspondence recommending neuropsychological evaluation to clarify Plaintiff's current cognitive function. Plaintiff's appeals challenged Hartford's procedural failures in obtaining medical records, substantive failures in evaluating the medical evidence, and improper reliance on behavioral health reviews that ignored the disabling physical effects of Plaintiff's hypomagnesemia and related conditions.

31. On November 5, 2025, Hartford issued its final denial on appeal, upholding the original denial determination.

**G. Hartford's Peer Review and Final Denial**

32. Hartford obtained independent medical record review reports from Dr. Juan M. Gutierrez, a psychologist board-certified in neuropsychology, and Dr. Ankush Bansal, a physician

board-certified in internal medicine, both dated September 2, 2025. These peer reviewers examined the medical records submitted during Plaintiff's appeal.

33. Dr. Gutierrez concluded that cognitive restrictions were warranted only from February 24, 2025 forward, based on neuropsychological testing performed on that date showing a Montreal Cognitive Assessment score of 20. He opined that there was insufficient objective evidence before February 24, 2025, to support functional restrictions, noting that mental status examinations frequently documented intact attention, memory, and reasoning. Dr. Gutierrez stated there was insufficient evidence to support limitations in the number of hours per day or days per week Plaintiff could work.

34. Dr. Bansal concluded that examination findings did not support restrictions or limitations for the period from July 1, 2024, through September 11, 2024, except for Plaintiff's inpatient hospitalization. He validated the off-work period for September 12-16, 2024, when Plaintiff was admitted for recurrent hypomagnesemia and hypercalcemia requiring IV treatment. Dr. Bansal opined that Plaintiff's abilities were sustainable for 40 hours per week.

35. On November 5, 2025, the Plan Sponsor issued its final decision upholding the denial of Plaintiff's short-term disability appeal. The Plan Sponsor found that Plaintiff did not meet the Policy definition of Total Disability and that his conditions did not prevent him from performing the essential duties of his occupation. The decision advised Plaintiff of his right to bring a civil action under ERISA Section 502(a) and extended the filing deadline to November 5, 2028, three years from the date of the appeal denial.

### H. Treating Physician Opinions Supporting Disability

36. On June 18, 2024, Dr. Upadhya conducted a telehealth visit documenting that Plaintiff was experiencing trouble concentrating at work, persistent low magnesium despite supplements, feeling tired all day, and poor appetite. Based on these findings, Dr. Upadhya recommended that Plaintiff stop work effective July 1, 2024.

37. Plaintiff remained under ongoing treatment by multiple specialists, including nephrologist Dr. Ramya Malchira, psychiatrist Dr. Ananya Sreepathi, and therapist Kristina de Bree, LMFT, with regular sessions documented from July through December 2024. These treating

providers consistently monitored Plaintiff's physical and mental health conditions throughout his disability period.

38. Objective assessment scores documented the severity of Plaintiff's impairments, including PHQ-9 scores of 17 on June 27, 2024 and 18 on July 28, 2024, both indicating moderately severe depression, a GAD questionnaire showing symptoms making functioning "very difficult," WHODAS 2.0 disability assessment, and a MoCA score of 20 indicating mild cognitive impairment. These standardized measures provided quantifiable evidence of Plaintiff's functional limitations.

39. On December 4, 2024, Dr. Upadhya completed a medical status questionnaire describing permanent impairment affecting Plaintiff's concentration, thinking, learning, and communication. Dr. Upadhya further recommended that Plaintiff undergo neuropsychological evaluation to clarify his current cognitive functioning and ability to meet job requirements.

## V. STANDARD OF REVIEW

40. The Plan documents grant the Employer discretionary authority to determine eligibility for benefits and to construe and interpret all terms of the Plan. Specifically, the Policy states: “The Employer has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Program.”

41. Hartford, as Claims Evaluator, was delegated the Employer's duties to determine benefits payable according to the terms and conditions of the Plan. Hartford exercised this discretionary authority in reviewing and denying Plaintiff's claim for short-term disability benefits.

42. Under the abuse of discretion standard, Hartford's decision must be upheld only if it is reasonable, meaning it is supported by substantial evidence in the record. A plan administrator abuses its discretion when its decision is arbitrary, capricious, or not supported by substantial evidence.

43. Even under the deferential abuse of discretion standard, Hartford abused its discretion in denying Plaintiff's claim for benefits because:

a. Hartford improperly discounted or ignored the opinions of Plaintiff's treating physicians, including Dr. Upadhya, Dr. Malchira, Dr. Sreepathi, and Ms. de Bree, without

adequate justification;

b. Hartford relied on peer reviews by Dr. Gutierrez and Dr. Bansal that were flawed, as they never examined the Plaintiff and their conclusions conflicted with the ongoing medical evidence from the Plaintiff's treating doctors and physicians;

c. Hartford relied on flawed peer reviews by Dr. Gutierrez and Dr. Bansal, who never examined Plaintiff and reached conclusions inconsistent with the longitudinal medical evidence from Plaintiff's treating physicians;

d. Hartford's behavioral health reviews improperly focused solely on psychiatric findings while ignoring the disabling physical effects of Plaintiff's severe hypomagnesemia, hypercalcemia, and related medical conditions;

e. Hartford's denial was based on the contradictory rationale of both "No Proof of Loss" and substantive medical insufficiency, revealing Hartford made merit-based determinations while simultaneously claiming it lacked information to decide;

f. Hartford's determination that Plaintiff could work full-time is not supported by substantial evidence and is contradicted by the opinions of his treating physicians who have examined and treated him longitudinally;

g. Hartford's peer reviewers improperly concluded that restrictions were warranted only from February 24, 2025 forward, ignoring documented disability from July 1, 2024, including hospitalization in September 2024 for the same conditions; and

h. No reasonable interpretation of the evidence in the record supports Hartford's conclusion that Plaintiff was capable of performing the essential duties of his occupation during the claim period.

## VI. <u>FIRST CAUSE OF ACTION</u> (Declaratory Relief under 29 U.S.C. §1132(a)(1)(B))

44. Plaintiff incorporates by reference all preceding paragraphs as if fully set foroth herein.

45. This claim is brought pursuant to ERISA 502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B), to recover benefits due under the terms of the Plan, to enforce rights under the terms of the Plan, and

to clarify rights to future benefits under the terms of the Plan.

46. Plaintiff was prevented from performing the essential duties of his occupation as a Designer CAD II, a sedentary position, due to severe electrolyte imbalances (hypomagnesemia and hypercalcemia), mental health conditions (depression, anxiety, and PTSD), cognitive impairment (mild neurocognitive disorder), and related symptoms, including profound fatigue, difficulty concentrating, and gastrointestinal effects from required medications. These conditions, individually and cumulatively, rendered Plaintiff unable to perform the essential duties of his sedentary position, which required sustained concentration, learning new software, and consistent cognitive function.

47. A controversy has arisen and now exists between Plaintiff and Defendants regarding Plaintiff's entitlement to weekly STD benefits from July 1, 2024 (or July 8, 2024, the benefit begin date) through the maximum benefit period ending January 5, 2025. Plaintiff argues that he was and is entitled to such benefits under the Disability Plan because he met the definition of Total Disability during this period. Hartford and the Plan presumably argue that the denial was justified and that no STD benefits are due to Plaintiff. Therefore, a judicial declaration of the parties' rights, obligations, and liabilities is both necessary and appropriate at this time.

48. Hartford's denial of Plaintiff's claim for benefits constituted an abuse of discretion.

49. As a result of the dispute and disagreement explained above, it has become necessary for Plaintiff to retain an attorney to enforce his rights under ERISA. Plaintiff, therefore, is entitled to an award of reasonable attorney fees and costs under ERISA, 29 U.S.C. §1132(g)(1)

## VII. <u>SECOND CAUSE OF ACTION</u> (Plan Benefits and Enforcement of Rights under 29 U.S.C. §1132(a)(1)(B))

50. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

51. The Plan documents grant Hartford discretionary authority to determine eligibility for benefits and to interpret the terms of the Plan. Accordingly, Hartford's denial is reviewed under the abuse of discretion standard. Under this standard, Hartford's decision must be upheld only if it is reasonable and supported by substantial evidence in the administrative record. A plan

administrator abuses its discretion when its decision is arbitrary, capricious, or not supported by substantial evidence.

55. Hartford abused its discretion in denying Plaintiff's claim for benefits. The administrative record contains substantial medical evidence establishing that Plaintiff was totally disabled under the Plan's definition, including treating physician opinions from Dr. Upadhya, Dr. Malchira, Dr. Sreepathi, and Ms. de Bree; objective test results including laboratory values showing severe hypomagnesemia (as low as 0.8) and hypercalcemia (11.0), PHQ-9 scores of 17 and 18 (moderately severe depression), MoCA score of 20 (mild cognitive impairment), and WHODAS disability assessment scores; hospitalization from September 12-16, 2024 for recurrent electrolyte abnormalities requiring IV treatment; and documented symptoms of profound fatigue, difficulty concentrating, electrolyte imbalances, and gastrointestinal effects from required medications that prevented Plaintiff from performing the essential duties of his sedentary position.

56. Hartford's denial was arbitrary, capricious, and lacked supporting evidence because it unjustly dismissed the opinions of Plaintiff's treating doctors, relied on flawed peer reviews by physicians who never examined Plaintiff, reached inconsistent conclusions with the medical evidence over time, failed to properly investigate by creating barriers to access medical records, focused only on psychiatric findings while ignoring the disabling physical effects of severe hypomagnesemia and hypercalcemia, and justified its denial with conflicting reasons. No reasonable interpretation of the evidence in the record supports Hartford's conclusion that Plaintiff could perform the essential duties of his job during the claim period.

57. Alternatively, if the Court determines that California Insurance Code §10110.6 renders the discretionary clause void and unenforceable, the Court should apply *de novo* review and independently determine that Plaintiff is entitled to benefits under the terms of the Plan.

58. Plaintiff is entitled to short-term disability benefits under the Disability Plan from July 9, 2024, through January 5, 2025, because he is "Totally Disabled" within the meaning of the Policy. Plaintiff was prevented from performing the essential duties of his occupation and earned less than 20% of his predisability earnings during the claim period.

/ / /

59. As a result of Hartford's wrongful denial, Plaintiff has suffered damages in an amount to be proven at trial and is entitled to STD benefits from the benefit begin date of July 8, 2024, through the maximum benefit period of January 5, 2025, or until he is no longer disabled, whichever is earlier.

60. As a result of the dispute and disagreement explained above, it has become necessary for Plaintiff to retain an attorney to enforce his rights under ERISA. Plaintiff, therefore, is entitled to an award of reasonable attorney fees and costs under ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, plaintiff GREGORY JOHNSON prays for judgment against defendants HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY and SHORT-TERM DISABILITY PLAN FOR EMPLOYEES OF DONALDSON COMPANY, INC., as follows:

1. For a judicial determination of the parties' respective rights, obligations and liabilities, relative to the matters referred to herein above;

2. For plan benefits now due and owing from July 8, 2024, through January 5, 2025, or until Plaintiff is no longer disabled, whichever occurs first, and the enforcement of Plaintiff's rights in that regard, relative to the matters referred to herein above;

3. For an order remanding the claim back to the claim administrator for a determination regarding Plaintiff's eligibility for Long-Term Disability benefits;

4. For an award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1) and other applicable law;

5. For an award of prejudgment interest; and

6. For such other and further relief as the Court deems just and proper.

DATED: January 23, 2026

Respectfully submitted,

LAW OFFICES OF KEVIN ZIETZ

By: Kevin M. Zietz
Kevin M. Zietz
Attorney for Plaintiff
GREGORY JOHNSON